UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION

IN RE:

ASHLEY H. RIGGS
ADA K. RIGGS

DEBTORS                                          CASE NO. 06-20826
                                                 CHAPTER 13

## MEMORANDUM OPINION AND ORDER

This matter affords the court its first opportunity to address the issue of how an above-median income Chapter 13 debtor's projected disposable income is to be determined. The Debtors here have submitted a plan that proposes to pay $290.00 per month to unsecured creditors. The Trustee, in her Report and Recommendation as to Confirmation, has not recommended confirmation, contending that the Debtors' Schedule J indicates they have disposable monthly income in the amount of $880.00. The Debtors filed their Response to the Trustee's Negative Recommendation as to Confirmation on January 18, 2007; the Trustee filed her Brief in Support of Objection to Confirmation on January 23, 2007. The matter is now ripe for decision.

The Debtors filed their Chapter 13 petition on September 22, 2006, including Schedules I (Current Income of Individual Debtors) and J (Current Expenditures of Individual Debtors)as required by Bankruptcy Code section 521(a)(1)(B)(i). These schedules show the Debtors' total combined net monthly income to be $4,015.60 and monthly expenses to be $2,827.58. On December 19, 2006, the Debtors amended their Schedule J to add a $300.00 day care expense, making their

1

monthly expenses $3,127.58.  The difference in the amounts on their Schedules I and J is $882.02.

In conjunction with the filing of their petition, the Debtors also completed their Form B22C, Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income, the so-called "means test."  The calculations performed in completing Form B22C resulted in the determination that the Debtors' applicable commitment period is five years, and their disposable income is to be determined pursuant to Bankruptcy Code section 1325(b)(3).

Section 1325(b)(3) provides in pertinent part:

> (3) Amounts reasonably necessary to be expended under paragraph (2) shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income, when multiplied by 12, greater than--
> . . . .
>    (B) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; . . . .

11 U.S.C. § 1325(b)(3).  Section 1325(b)(2) provides in pertinent part:

> (2) For purposes of this subsection, the term 'disposable income' means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended--
>    (A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; . . . .

11 U.S.C. § 1325(b)(2).  The term "current monthly income" is defined at Code section 101(10A) as ". . . . the average monthly income from all sources . . . . derived during the 6-month period ending on the last day of the calendar month preceding the date of commencement of

2

the case . . . ." 11 U.S.C. § 101(10A).  As set out in section 1325(b)(3), expenses are to be determined pursuant to section 707(b)(2)(A) and (B).  Under that section, monthly expenses are drawn from certain Internal Revenue Service ("IRS") standards.  Calculation of the deductions allowed under section 707(b)(2) is performed in Part IV of Form B22C.

The Debtors' Form B22C showed annualized income of $71,524.44, more than the applicable median family income of $56,866.00.  Their expenses allowed under IRS standards were $4,408.97, additional expense deductions were $68.91, and deductions for debt payment were $1,752.75, for a total of all deductions allowed under section 707(b) in the amount of $6,230.63.  Disposable monthly income under section 1325(b)(2) is calculated in Part V of Form B22C.  Taking gross monthly income set out in Part I ($5,960.37) and subtracting from it the deductions calculated in Part IV ($6,230.63) resulted in negative $270.26 monthly disposable income.  The Debtors filed an Amendment to Statement of Disposable Monthly Income on January 2, 2007, which made changes to the expenses listed on the original Form B22C.  These changes resulted in total deductions of $5,942.37 which produced monthly disposable income of $18.00.

For purposes of determining disposable income in instances where there is an objection to the confirmation of the plan, Bankruptcy Code section 1325(b)(1)(B) provides:

> If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, . . . the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the

plan.

11 U.S.C. § 1325(b)(1)(B). The Debtors maintain that the term "projected disposable income" must be interpreted in light of section 1325(b)(3) which requires that expenses be determined pursuant to section 707(b), and 1325(b)(2), which defines "disposable income" as "current monthly income," which in turn is defined at section 101(10A) as the Debtors' average monthly income from the six months preceding the filing of their petition. They conclude that their "projected disposable income" may therefore only be determined by reference to the calculations performed on their Form B22C, and that their Schedules I and J are irrelevant. In support of their position, the Debtors cite several cases which adopt this reasoning. *See In re Farrar-Johnson*, 353 B.R. 224 (Bankr. N.D. Ill. 2006); *In re Alexander*, 344 B.R. 742 (Bankr. E.D.N.C. 2006); *In re Rotunda*, 349 B.R. 324 (Bankr. N.D.N.Y. 2006). These courts hold that the "plain meaning" of the above-referenced statutes requires that the determination of "projected disposable income" be accomplished only in reference "disposable income" as defined in section 1325(b)(2). The result of this interpretation is to skew the debtors' disposable income based on the six month period immediately prior to filing and allow a degree of manipulation of the system which seems unlikely to have been intended by Congress. The timing of the debtors' filing should not be dispositive of this issue where the Code otherwise anticipates calculations based on annual income.

    The Trustee disagrees, contending that the Debtors have the ability to pay more to unsecured creditors than they are proposing to pay. She argues that the Debtors' surplus income as shown on

4

Schedules I and J is the applicable "projected disposable income" required to be devoted to their Chapter 13 plan during their applicable commitment period pursuant to section 1325(b)(1)(B). As the Trustee points out, while the definition of current monthly income is based on a historical six-month average, the majority of courts addressing this issue have not adopted the "backward looking" approach that this definition would seem to require, but instead have focused on the distinction between "projected disposable income" and "disposable income."

As summarized by the court in *In re Hardacre*, 338 B.R. 718 (Bankr. N.D. Tex. 2006),

> The court believes that the term 'projected disposable income' must be based upon the debtor's anticipated income during the term of the plan, not merely on an average of her prepetition income. This conclusion is buttressed not only by the anomalous results that could occur by strictly adhering to section 101(10A)'s definition of 'current monthly income,' but because, taken as a whole, section 1325(b)(1) commands such a construction.
> First, section 1325(b)(1)(B)'s use of the phrase 'projected disposable income' rather than 'disposable income' is instructive. The court is to presume that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another[.] While Congress could have used the phrase 'disposable income' in section 1325(b)(1)(B) and thereby invoked its definition as set forth in section 1325(b)(2), it chose not to do so. Consequently, Congress must have intended 'projected disposable income' to be different than 'disposable income.'
> Next, section 1325(b)(1)(B) refers to the projected disposable income '*to be received* in the applicable commitment period.' (Emphasis supplied). If Congress had intended that projected disposable income for plan purposes be base solely on prepetition average income, this language would be superfluous. This suggests that Congress intended to refer to the income actually received by the debtor during the commitment period, rather than prepetition average income.
> Finally, section 1325(b)(1) requires the court to determine whether a debtor is committing all of her projected disposable income as of the effective date of the

5

>      plan. This language suggests that the debtor's income as of
>      the effective date of the plan is the one that is relevant
>      to the calculation of 'projected disposable income,' not her
>      income prior to filing. Consequently, 'projected disposable
>      income' under section 1325(b)(1)(B) necessarily refers to
>      income that the debtor reasonably expects to receive during
>      the term of her plan.

*Id.* at 723 (internal quotations and citations omitted). *See also In re Jass*, 340 B.R. 411 (Bankr. D. Utah 2006); *In re Grady*, 343 B.R. 747 (Bankr. N.D. Ga. 2006); *In re Risher*, 344 B.R. 833 (Bankr. W.D. Ky. 2006); *In re Demonica*, 345 B.R. 895 (Bankr. N.D. Ill. 2006); *In re Fuller*, 346 B.R. 472 (Bankr. S.D. Ill. 2006); *In re Edmunds*, 350 B.R. 636 (Bankr. D.S.C. 2006). This court agrees with the line of reasoning articulated so well by the *Hardacre* court, and finds that the Debtors' projected disposable income must be determined by reference to their Schedules I and J.

In this regard, the Trustee has further alleged that the amount of projected disposable income indicated on those schedules is understated because the Debtors have over-claimed a deduction for payroll taxes on Schedule I and an unnecessary deduction on Schedule J for secured debts being paid through the plan. As concerns the deductions, the Trustee's review of the Debtors' 2005 federal and state tax returns shows that the actual tax liability they incurred for that year was $5,227.00, while $10,477.00 was withheld. The Trustee calculates that their effective income and payroll tax rate is 18.32%, as opposed to the 26.11% they claim. She therefore contends that the actual tax expense that should be shown on their Schedule I is approximately $1,020.00 rather than the $1,454.06 claimed. In *In re Risher, supra*, the court required the turnover of tax refunds annually, holding that ". . . .disposable income is interpreted

6

broadly and includes tax refunds. . . ." *In re Risher*, 344 B.R. at 837. Here the Trustee seeks an adjustment of the monthly payment amount, rather than the turnover of refunds. The court agrees that such an adjustment should be made, and directs that the Debtors' tax expense as shown on their Schedule I be reduced to $1,020.00.

The Trustee also addresses a $190.00 deduction shown on the Debtors' amended Schedule J at item 13, installment payments for "polaris and kawasaki payments." Their amended plan, however, provides for a payment "inside the plan" to HSBC/Polaris for a 2000 Suzuki motorcycle and pull-behind trailer and to HSBC/Kawasaki for two ATVs. The total monthly amount to be paid on these vehicles per the plan is $153.32. There is no apparent explanation for the difference between this amount and the $190.00 on Schedule J. In any event, Item 13 specifically directs debtors not to list payments included in the plan. The Trustee contends that the net effect of the inclusion of these installment payments on Schedule J is to artificially lower the amount available to pay creditors. The court agrees with the Trustee's analysis and directs that the $190.00 amount shown at Item 13 on Schedule J be deleted. The propriety of the retention by the debtors of the property securing these particular debts can await a confirmation hearing on an amended plan if the debtor chooses to amend.

In consideration of all of the foregoing, the court finds that the Trustee's negative recommendation as to confirmation of the Debtors' plan is well taken. It is therefore hereby ordered that the Debtors have fifteen days from the date of entry of this Memorandum Opinion and Order to propose an amended plan which calculates their

```
projected disposable income from corrected Schedules I and J as set

out above.


Copies to:

Matthew T. Sanning, Esq.
Beverly M. Burden, Esq., Trustee
```

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
*The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.*



**Signed By:**
<u>*William S. Howard*</u>
**Bankruptcy Judge
Dated: Tuesday, February 27, 2007
(wsh)**